UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

DONALD LEE BRADLEY,               ) NO. ED CV 13-1277-AS
                                  )
          Plaintiff,              ) **MEMORANDUM OPINION**
                                  )
     v.                           )
                                  )
CAROLYN W. COLVIN, Acting         )
Commissioner of Social            )
Security,                         )
                                  )
          Defendant.              )
                                  )
_____

**PROCEEDINGS**

     On July 29, 2013, Plaintiff filed a Complaint seeking review
of the Commissioner's denial of Plaintiff's application for
supplemental security income ("SSI").   (Docket Entry No. 3).   On
August 22, 2013, the matter was transferred and referred to the
current Magistrate Judge.   (Docket Entry No. 12). The parties
thereafter consented to proceed before a United States Magistrate
Judge (Docket Entry Nos. 14-15).   On December 9, 2013, Defendant
filed an Answer and the Administrative Record ("A.R.").   (Docket

Entry Nos. 17-20).  On January 8, 2014, Plaintiff filed a Memorandum of Points and Authorities in support of the Complaint (Docket Entry No. 20).  On March 12, 2014, Defendant filed a Memorandum of Points and Authorities in support of the Answer (Docket Entry No. 24).  On March 27, 2014, Plaintiff filed a Reply Memorandum (Docket Entry No. 25).  The Court has taken this matter under submission without oral argument.  See C.D. Local R. 7-15; "Case Management Order," filed July 31, 2013 (Docket Entry No. 7).

## BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

Plaintiff, a former restaurant and bar owner, asserts disability since January 28, 2010, based on alleged chronic arthritis in his neck, back, arms, and feet, depression, high blood pressure, a sleeping disorder and an eating disorder. (A.R. 22). The Administrative Law Judge ("ALJ") examined the record and held a hearing on February 21, 2012. (A.R. 34-67).  Plaintiff, who was represented by counsel, testified by teleconference. (A.R. 36-58). The ALJ also heard testimony from a vocational expert (A.R. 59-66).

On February 29, 2012, The ALJ issued a decision denying Plaintiff's application for SSI. (A.R. 18-28).  The ALJ made the following findings: (1) Plaintiff has the severe medically determinable impairments of cervical degenerative disc disease, depressive disorder, and alcohol abuse (A.R. 20); (2) Plaintiff's impairments do not meet or equal a listed impairment (A.R. 20-22); (3) Plaintiff retains the residual functional capacity to perform medium work, defined as follows: Plaintiff can "lift and carry 25 pounds frequently and 50 pounds occasionally, stand/walk for six

2

hours and sit for six hours in an eight-hour day;" frequently climb ramps or stairs, balance, stoop, kneel, crouch, and crawl; occasionally climb ladders, ropes or scaffolds; and is "limited to simple, routine, and repetitive tasks, involving only simple work-related decisions with few, if any, work place changes" (A.R. 22); (4) Plaintiff lacks the residual functional capacity ("RFC") to perform his past relevant work  (A.R. 26); and (5) Plaintiff is able to perform jobs that exist in significant numbers in the national economy, including the occupations of hand packager and janitor.  (A.R. 27).

Accordingly, the ALJ found that Plaintiff was not disabled at any time from the alleged disability onset date of January 28, 2010, through February 29, 2012, the date of the decision.  (<u>Id.</u> 17).  On May 21, 2013, the Appeals Council denied review. (A.R. 3-5).

**PLAINTIFF'S CONTENTIONS**

Plaintiff contends that the ALJ erred in (1) failing to articulate specific and legitimate reasons for rejecting his treating physician's opinion that he was disabled (Plaintiff's Mem 3-9); and (2) failing to articulate specific and legitimate reasons for rejecting the examining physician's opinion that he was capable of performing work at the light exertional level. (<u>Id.</u> 9-13).

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine

if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used proper legal standards. 42 U.S.C. § 405(g); see Carmickle v. Comm'r, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007). "Substantial evidence is more than a scintilla, but less than a preponderance." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997). It is relevant evidence "which a reasonable person might accept as adequate to support a conclusion." Hoopai, 499 F.3d at 1074; Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996)). To determine whether substantial evidence supports a finding, "a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 1997) (citation omitted); see Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (inferences "reasonably drawn from the record" can constitute substantial evidence).

This Court "may not affirm [the Commissioner's] decision simply by isolating a specific quantum of supporting evidence, but must also consider evidence that detracts from [the Commissioner's] conclusion." Ray v. Bowen, 813 F.2d 914, 915 (9th Cir. 1987) (citation and internal quotation marks omitted); Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (same). However, the Court cannot disturb findings supported by substantial evidence, even though there may exist other evidence supporting Plaintiff's claim. See Torske v. Richardson, 484 F.2d 59, 60 (9th Cir. 1973). "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, [a] court may not

substitute its judgment for that of the [Commissioner]." <u>Reddick</u>, 157 F.3d 715, 720-21 (9th Cir. 1998) (citation omitted).

## DISCUSSION

After consideration of the record as a whole, the Court finds that the Commissioner's findings are supported by substantial evidence and are free from material[1] legal error.

### A.   <u>Applicable Law</u>

"The Social Security Act defines disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" <u>Webb v. Barnhart</u>, 433 F.3d 683, 686 (9th Cir. 2005) (quoting 42 U.S.C. § 423 (d)(1)(A)). The ALJ follows a five-step, sequential analysis to determine whether a claimant has established disability.  20 C.F.R. § 404.1520.

At step one, the ALJ determines whether the claimant is engaged in substantial gainful employment activity.  <u>Id.</u> § 404.1520(a)(4)(i).  "Substantial gainful activity" is defined as "work that . . . [i]nvolves doing significant and productive

---

[1]   The harmless error rule applies to the review of administrative decisions regarding disability.  <u>See</u> <u>McLeod v. Astrue</u>, 640 F.3d 881, 886-88 (9th Cir. 2011); <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005) (stating that an ALJ's decision will not be reversed for errors that are harmless).

physical or mental duties[] and . . . [i]s done (or intended) for pay or profit." Id. §§ 404.1510, 404.1572. If the ALJ determines that the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two which requires the ALJ to determine whether the claimant has a medically severe impairment or combination of impairments that significantly limits his ability to do basic work activities. See id. § 404.1520(a)(4)(ii); see also Webb, 433 F.3d at 686. The "ability to do basic work activities" is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); Webb, 433 F.3d at 686. An impairment is not severe if it is merely "a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." Webb, 433 F.3d at 686.

If the ALJ concludes that a claimant lacks a medically severe impairment, the ALJ must find the claimant not disabled. Id.; 20 C.F.R. § 1520(a)(ii); Ukolov v. Barnhart, 420 F.3d 1002, 1003 (9th Cir. 2005) (ALJ need not consider subsequent steps if there is a finding of "disabled" or "not disabled" at any step).

However, if the ALJ finds that a claimant's impairment is severe, then step three requires the ALJ to evaluate whether the claimant's impairment satisfies certain statutory requirements entitling him to a disability finding. Webb, 433 F.3d at 686. If the impairment does not satisfy the statutory requirements entitling the claimant to a disability finding, the ALJ must determine the claimant's RFC, that is, the ability to do physical and mental work activities on a sustained basis despite limitations

6

from all his impairments.   20 C.F.R. § 416.920(e).

Once the RFC is determined, the ALJ proceeds to step four to assess whether the claimant is able to do any work that he or she has done in the past, defined as work performed in the last fifteen years prior to the disability onset date.   If the ALJ finds that the claimant is not able to do the type of work that he or she has done in the past or does not have any past relevant work, the ALJ proceeds to step five to determine whether – taking into account the claimant's age, education, work experience and RFC – there is any other work that the claimant can do and if so, whether there are a significant number of such jobs in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 404.1520(a)(4)(iii)-(v).   The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.   Tackett, 180 F.3d at 1098.

**B.   The ALJ Provided Specific And Legitimate Reasons For Rejecting The Opinion Of Plaintiff's Treating Physician**

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians:   (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining or reviewing physicians).   See 20 C.F.R. §§ 404.1502, 404.1527, 416.902, 416.927; see also Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).   Generally, the opinions of treating physicians are given greater weight than those of other physicians, because

7

treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant. Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007); Smolen, 80 F.3d at 1285. Where, as here, a treating physician's opinion is contradicted by another doctor, the ALJ must provide specific and legitimate reasons supported by substantial evidence to properly reject it. Lester, 81 F.3d at 830-31 (citing Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)); see also Orn, 495 F.3d at 632-33; Soc. Sec. Ruling 96-2p.

On December 22, 2009, Plaintiff's treating physician, Bradley Hope, opined that Plaintiff was unable to work due to neck pains, noting that Plaintiff continued to experience neck pain and pain with range of motion. (A.R. 245). X-rays of Plaintiff's cervical spine revealed mild "C5-C6 spurring consistent with spondylosis, but no mineralization, fracture, or vertebral wedge deformities, no spondylolisthesis and no soft tissue swelling. (A.R. 245-47). On January 28, 2010, Dr. Hope opined that Plaintiff was unable to work due to neck pains and noted that Plaintiff had left arm pain due to a fracture (A.R. 243). On February 24, 2011, Dr. Hope again concluded that Plaintiff was unable to work, part time or full time, due to severe neck arthritis. (A.R. 306). On August 18, 2011, Dr. Hope noted that Plaintiff had driven four hours to see him and that he had been involved in a hit and run accident one week prior for which he had received emergency treatment and had tripped and fallen while gardening two days prior to the visit. (A.R. 312). Dr. Hope saw Plaintiff on September 23, 2011 and continued to believe that Plaintiff was unable to work, noting that Plaintiff had been in jail due to a DUI conviction but resumed

8

drinking upon his release, and had suffered a right wrist deformity due to a fracture after he was injured in a motorcycle accident on August 7, 2011. (A.R. 318). X-rays revealed moderately severe degenerative disc and facet joint changes but no evidence of acute cervical spine, or head, wrist, or pelvis fracture. (A.R. 324-327).

On November 15, 2011, Dr. Hope completed a "medical source statement of ability to do work related activities (physical)" in which he checked off boxes indicating that Plaintiff could "never" lift or carry anything up to or greater than 10 pounds, Plaintiff could not sit for more than fifteen minutes, stand for more than six minutes and walk for more than fifteen minutes at any one time without interruption, and that during an eight-hour day, Plaintiff could only sit for two hours, stand for three hours, and walk for thirty minutes. (A.R. 349-50). Dr. Hope also indicated that Plaintiff required the use of a cane to ambulate, the use of the cane was medically necessary but that Plaintiff could walk one mile *without* the use of a cane. (A.R. 350). Dr. Hope's assessment was based on the following: "Plaintiff has severe neck arthritis," "severe bilateral wrist sprains," "severe left knee [and] right [first] toe pains," and pain walking, sitting, and using arms and neck. (A.R. 350). Dr. Hope also found that Plaintiff could not reach in any direction with either hand and could never use his right lower extremity to operate foot controls, but could operate a motor vehicle up to one-third of the workday. (A.R. 351-53).

With respect to Dr. Hope's opinions, the ALJ stated the

9

following:

> I reject this opinion because it is not consistent with
> Dr. Hope's own clinical findings, which were very
> limited. In addition, it is not consistent with the fact
> that the claimant was able to drive for long periods to
> attend his appointments, far longer than the 15 minutes
> of sitting opined by Dr. Hope, and use his upper
> extremities for driving far in excess of Dr. Hope's
> estimate . . . the record reveals that actual treatment
> visits have been relatively infrequent.

(A.R. 24)

Plaintiff contends that the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Hope's opinion, by failing to state why Dr. Hope's opinion regarding Plaintiff's disability was inconsistent with his clinical findings. (Plaintiff's Mem. 6). In particular, Plaintiff claims that the ALJ erred in (1) finding that Plaintiff's ability to drive four hours to see Dr. Hope was inconsistent with Dr. Hope's opinion that Plaintiff could not sit for more than fifteen minutes at one time (Id.); (2) considering Plaintiff's relatively infrequent visits to see Dr. Hope (Id. 7); and (3) stating that "the possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes." (Id. 8). The Court disagrees.

Plaintiff's reliance on Embrey v. Bowen, 849 F.2d 418 (9th Cir. 1988) in support of his claim that the ALJ may not reject a

treating doctor's opinion because it is inconsistent with the doctor's clinical findings (Plaintiff's Mem. 6) is misplaced. The Ninth Circuit held, in <u>Embrey</u>, that it was insufficient for an ALJ to merely conclude, without further explanation, that the treating physician's opinion was not supported by sufficient objective findings. <u>Id.</u> at 421. Here, the ALJ not only stated that he found Dr. Hope's opinion regarding Plaintiff's disability to be inconsistent with his clinical findings, but also specified the inconsistencies. For example, the ALJ noted that Dr. Hope's opinion that Plaintiff (1) could not sit for more than fifteen minutes at any one time without interruption, (2) had limited use of his arms and hands, and (3) could *never* use his right lower extremity to operate foot controls, was inconsistent with Dr. Hope's progress note – just three months prior – in which he documented the fact that Plaintiff had driven four hours to make his appointment. (A.R. 312, 350). Moreover, Plaintiff testified, during the administrative hearing, that he drove four hours to see Dr. Hope. (A.R. 38-39). The ALJ also noted that Dr. Hope's clinical findings were limited. (A.R. 24). This noted inconsistency is a valid basis for rejecting Dr. Hope's opinion. <u>See</u> <u>Valentine v. Comm'r Soc. Sec. Admin.</u>, 574 F.3d 685, 692-93 (9th Cir. 2009) (contradiction between a treating physician's opinion and his treatment notes constitutes a specific and legitimate reason for rejecting the treating physician's opinion); <u>Bayliss v.</u> <u>Barnhart</u>, 427 F.3d 1211, 1216 (9th Cir. 2005) (contradiction between treating physician's assessment and clinical notes justifies rejection of assessment); <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1432 (9th Cir. 1995) (ALJ properly rejected physician's determination where it was "conclusory and unsubstantiated by

relevant medical documentation"); see also Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ properly discounted treating doctor's opinions for being "so extreme as to be implausible," and "not supported by any findings," where there was "no indication in the record what the basis for these restrictions might be").  It would be "error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported . . . or if it is inconsistent with the other substantial evidence." Social Security Ruling 96-2p.  Thus, the Court finds that the ALJ's reliance on conflicting medical evidence and inconsistencies constitutes specific and legitimate reasons for discounting Dr. Hope's opinion. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); see also 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give the opinion.").

Plaintiff cites Ghokassian v. Shalala, 41 F.3d 1300 (9th Cir. 1994), a case in which the claimant saw his treating physician twice during the fourteen month period prior to the hearing, in support of his position that the ALJ improperly relied on Plaintiff's "relatively infrequent" visits in discounting Dr. Hope's opinion. (Plaintiff's Mem. 7).  Plaintiff claims that his limited visits were due to his lack of medical coverage.  Id. However, Ghokassian held that the ALJ erred by discounting the treating doctor's opinion on the grounds that the claimant had first seen the doctor a little more than a year before the hearing and had only seen the doctor on two occasions and because the

doctor had failed to identify the interpreter who had accompanied the claimant. Ghokassian, 41 F.3d at 1303. The Court found that, under the circumstances presented, the doctor's opinion about the claimant's disability was the opinion of a treating doctor. Here, the ALJ properly noted that Plaintiff's "actual treatment visits" to Dr. Hope were infrequent (A.R. 24). Indeed, the record supports this finding and does not support Plaintiff's claim that he only tried to see Dr. Hope in emergency situations because he lacked medical coverage. (See A.R. 39; Plaintiff's Mem. 7). Plaintiff saw Dr. Hope in February 2011 for a flu shot and in August 2011 for a laceration on his nose and a "note for disability." (A.R. 313, 318). The Court finds that the ALJ properly considered Plaintiff's relatively infrequent "actual" treatment visits with Dr. Hope as a factor in conjunction with the lack of supporting objective medical evidence for Plaintiff's claims regarding the severity and limiting effects of his symptoms in rejecting Dr. Hope's opinion regarding Plaintiff's disability.

Plaintiff also claims that the ALJ erred in stating that "the possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes." (Plaintiff's Mem. 8; A.R. 24). However, the ALJ followed this observation with the statement that "[w]hile it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case. I am not persuaded by Dr. Hope's opinions about the claimant's capabilities when considered along with the other evidence of

record." (A.R. 24-25). Thus, the ALJ recognized that even if such motives exist, they are difficult to confirm and therefore did not base his decision on this factor. As set forth above, the ALJ provided valid, specific and legitimate reasons for rejecting Dr. Hope's opinion. Therefore, any error in making this statement is harmless because it would not change the outcome of the case. <u>Molina v. Astrue</u>, 674 F.3d 1104, 1115 (9th Cir. 2012) (errors are harmless if the ALJ would have reached the same result absent the error).

**C.   <u>The ALJ Provided Specific And Legitimate Reasons For Rejecting The Opinion Of The Examining Doctor</u>**

Dr. Song, a state agency doctor, examined Plaintiff on September 25, 2010. (A.R. 252). Plaintiff reported that his many bone fractures have prevented him from being able to ride a motorcycle, drive a car, and turn his head, and Dr. Song noted that Plaintiff was wearing a bandage on his right lower leg, a knee brace on his left leg and a right wrist brace. (<u>Id.</u>). Plaintiff indicated that he used a neck brace and a left wrist brace but did not wear them to the examination. (<u>Id.</u>). Plaintiff claimed that he had broken his fibula several months prior to the examination but did not obtain medical treatment for the injury. (<u>Id.</u>). Dr. Song's examination revealed that Plaintiff, who was not ambulating with a cane, was able to bear weight on both legs without any difficulty, and there was no tenderness to palpation of any of his limbs including his right lower extremity which Plaintiff alleged had been broken. (A.R. 252, 254). A straight leg test was negative

14

to eighty degrees without pain. (A.R. 254). Dr Song found prominent bone spurs on Plaintiff's left foot and less prominent bone spurs on his right foot and minor tenderness to palpation. (Id.). There was no evidence of muscle atrophy. (Id.). Dr. Song diagnosed Plaintiff as having multiple broken bones and limited range of motion of the cervical and lumbar spines, secondary to arthritis and found that Plaintiff could ambulate without a cane and was able to bear weight on both of his legs. (A.R. 253, 255). Based on these findings, Dr. Song assessed Plaintiff as having the functional capacity to lift and carry twenty pounds occasionally and ten pounds frequently, stand and walk two to four hours in an eight-hour day with normal breaks, sit without restriction, but with exertional limitations for climbing, stooping, kneeling, balancing, crouching and crawling. (A.R. 254).

On October 19, 2010, state agency medical consultant, Dr. Richard Betcher, reviewed Dr. Song's clinical findings and opinion regarding Plaintiff's residual functional capacity and concluded that, based on Dr. Song's objective findings, Plaintiff could stand and walk for at least six hours in an eight-hour day and did not require the use of a cane. (A.R. 283). Dr. Betcher also questioned Plaintiff alleged homelessness, noting that Plaintiff could afford expensive doctor's prescriptions including Viagra and was able to shop and cook. Accordingly, Dr. Betcher opined that Plaintiff was capable of medium exertion. On February 2, 2011, another state agency medical consultant, Dr. Roger Fast, concurred with Dr. Betcher's opinion after reviewing Dr. Song's clinical findings and opinion. (A.R. 299). Dr. Fast concluded that

15

Plaintiff's allegations regarding the severity of his symptoms were only partially credible. Id.

With respect to Dr. Song's opinions, the ALJ stated the following:

> I am not persuaded by Dr. Song's opinion and am more persuaded by the opinions of the State agency medical consultants who reviewed the evidence and concluded that the claimant has not shown that he is capable of less than a range of medium work, as described in the residual functional capacity. . . [ ] As pointed out by the medical consultants, although he has cervical spine degeneration, his allegations of severity and persistence of symptoms is not well documented by the medical evidence. The clinical findings by Dr. Song include a normal gait, normal range of motion, intact strength, intact reflexes, and no evidence of atrophy. He could bear weight without a cane and there was no evidence of tenderness, despite his allegations of a broken leg bone. His statements that he sought no treatment for a broken leg are not credible. The claimant describes a difficult but fairly active life style.

(A.R. 25).

Plaintiff contends that the ALJ failed to provide specific and

legitimate reasons for rejecting Dr. Song's opinion that Plaintiff was only capable of light exertion, and erred in giving greater weight to the opinions of the non-examining physicians who concluded that Plaintiff was capable of performing work at the medium exertion level. (Plaintiff's Mem. 9-10). In particular, Plaintiff challenges the ALJ's consideration of Dr. Song's findings that Plaintiff exhibited "normal gait, normal range of motion, intact strength, intact reflexes and no evidence of muscle atrophy" and the ALJ's observation that Plaintiff lived a fairly active life style. (Id. 11-12).

The ALJ noted that Dr. Song's assessment was inconsistent with her own physical examination findings and plaintiff's statements, and that despite these inconsistencies, Dr. Song found the information Plaintiff provided regarding his symptoms to be "fairly reliable." (A.R. 252-53). For example, Plaintiff claimed to have fractured his right leg but did not receive any medical treatment for this injury and Dr. Song's physical examination revealed no tenderness upon palpation. In addition, although Plaintiff brought a cane with him, Dr. Song noted that Plaintiff was able to ambulate without the cane and could bear weight on both legs. (A.R. 25, 253-53). The ALJ found Dr. Song's opinion with respect to the severity and limiting effects of Plaintiff's symptoms to be based on Plaintiff's subjective statements which the ALJ discounted.[2] "An

---

[2]    The Court finds that the AlJ's adverse credibility determination, which Plaintiff does not challenge, is supported by the record. Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 600 (9th Cir. 1999) (conflict between subjective complaints and the
(continued...)

1  ALJ may reject a treating physician's if it is based 'to a large

2  extent' on a claimant's self-reports that have been properly

3  discounted as incredible." Tommasetti v. Astrue, 533 F.3d 1035,

4  1041 (9th Cir. 2008).

5

6      The ALJ found that Dr. Song's physical examination findings of

7  "normal gait, normal range of motion, intact strength, intact

8  reflexes, and no evidence of atrophy," (A.R. 25, 254-55) and

9  negative straight leg test (A.R. 25, 254) were inconsistent with her

10  opinion that Plaintiff was only capable of work at the light

11  exertional level. (A.R. 25, 255-56). See Batson v. Commissioner,

12  359 F.3d 1190, 1195 n.3 (9th Cir. 2004) (ALJ entitled to reject

13  doctor's report where "treatment notes do not provide objective

14  medical evidence of the limitations asserted in the report");

15  Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (ALJ entitled

16  to reject doctor's report where "treatment notes provide no basis

17  for the functional restrictions he opined"). Thus, the ALJ was

18  entitled to rely on these factors, demonstrating the lack of

19

20      [2](...continued)
   objective medical evidence in the record is a sufficient reason
21  that undermines a claimant's credibility; Osenbrock v. Apfel, 240
   F.3d 1157-1165-66 (9th Cir. 2001) (affirming ALJ's decision that
22  relied in part on finding that neurological and orthopedic
   evaluations revealed "very little evidence" of any significant
23  disabling abnormality of the claimant's upper or lower extremities,
   or spine). Where the ALJ has made specific findings justifying a
24  decision to disbelieve Plaintiff's symptom allegations and those
   findings are supported by substantial evidence in the record, "we
25  may not engage in second guessing." Thomas, 278 F.3d 947, 958-59
   (9th Cir. 2002). Therefore, Dr. Song's reliance on Plaintiff's
26  subjective claims is a specific and legitimate reason for the ALJ
   to reject Dr. Song's opinion about Plaintiff's ability to perform
27  light exertional work.

28
                                    18

supporting objective evidence for Dr. Song's opinion, in finding Dr. Song's opinion to be overly restrictive.

The ALJ properly considered Plaintiff's reported daily activities in discounting Dr. Song's opinion that Plaintiff was only capable of light exertional work, noting that Plaintiff lives a difficult but active life style. (A.R. 25). Plaintiff admitted to drinking a few beers a day, and was able to shop, cook, and take care of his personal hygiene when facilities were available, and testified that he was able to drive long distances and that his daily activities included "looking through garbage dumpsters." (A.R. 25-26, 52). The ALJ properly found these daily activities to be inconsistent with an RFC that was limited to light exertional work. (A.R. 25).[3] Daily activities that are inconsistent with alleged symptoms are a relevant credibility determination. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

Finally, the ALJ was also entitled to give greater weight to the opinions of the reviewing doctors who both opined, after reviewing the record, that Plaintiff was capable of medium exertion work with limitations because their findings were more consistent with the record. "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent and clinical findings or other evidence in the record." Thomas, 278 F.3d at 957; See 20 C.F.R. § 416.927(d)(4) (providing that more weight is given to an opinion

---

[3]    Dr. Betcher found Plaintiff's ability to shop and cook was inconsistent with his alleged homelessness. (A.R. 283).

that is more consistent with the record as a whole); 20 C.F.R. 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give that opinion.").

**CONCLUSION**

The Court finds that the ALJ stated specific, legitimate reasons for discrediting Dr. Hope's opinion regarding Plaintiff's disability and Dr. Song's opinion about the limiting effects of Plaintiff's symptoms. See Thomas, 278 F.3d at 957-58; Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989). Thus, the ALJ's decision that Plaintiff failed to establish disability was properly based upon substantial evidence. There was no error.

**ORDER**

For all of the foregoing reasons, the decision of the Administrative Law Judge is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:   January 2, 2015.



  /s/

ALKA SAGAR

UNITED STATES MAGISTRATE JUDGE